## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**STANLEY BARRAL HAYSBERT,**

  **Plaintiff,**

   v.          **Civil Action No. 20-2152 (JDB)**

**REGINALD WORD,**

  **Defendant.**

## MEMORANDUM OPINION

On November 19, 2017, plaintiff Stanley Barral Haysbert agreed to lend $15,000 to defendant Reginald Word.  In exchange, Word agreed to repay Haysbert $33,000 by December 23, 2017 and to pay fifteen percent monthly interest on any amount not paid within six business days of the due date.  As agreed, Haysbert gave Word a $15,000 loan, but Word never repaid any amount.  Nearly two years later, Haysbert brought suit against Word for breach of contract, seeking $181,500 in compensatory damages.  Word now moves to dismiss the suit for improper venue or "remove" it to state court in Virginia on <u>forum non conveniens</u> grounds, to dismiss for failure to state a claim, or in the alternative, to grant summary judgment in favor of Haysbert for only $20,400.  For the reasons stated below, the Court will grant defendant's motion and dismiss this case for <u>forum non conveniens</u>.

## BACKGROUND

### I. Factual Background

At the pleading stage, district courts accept as true a plaintiff's factual allegations, <u>see</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), and thus the Court recites the facts as presented in plaintiff's complaint.  Haysbert is a resident of Hampton, Virginia.  Compl. [ECF No. 1] ¶ 3.  Word

is a resident of Washington, D.C.  Id. ¶ 4.  On November 19, 2017, after discussing a potential

loan by telephone and text message, Haysbert and Word executed a written loan agreement

("Agreement").  See id. ¶ 6; Promissory Note [ECF No. 10-2].  The terms of the Agreement were

as follows.  Haysbert would lend Word $15,000.  Compl. ¶ 7.  In exchange, Word would pay

Haysbert a principal sum of $33,000 by December 23, 2017.  Id. ¶ 8; Promissory Note at 1.  Any

payment not received within six business days of that due date would be considered a late payment,

subjecting Word to a late fee of fifteen percent interest per month applied to the sum then due and

payable.  Compl. ¶ 10; Promissory Note at 1.  If the interest rate payable due to late fees were to

exceed the maximum interest rate permitted by law, the interest rate would be automatically

reduced to the maximum legal rate.  Compl. ¶ 10; Promissory Note at 1.  Finally, the parties agreed

that the Agreement would be "governed by the laws of the Commonwealth of Virginia excluding

its conflict of law rules" and that "[t]he exclusive jurisdiction and venue of any legal action

instituted by any party to this [Agreement] shall be Hampton, Virginia."  Promissory Note at 2.

Both parties signed the Agreement, and Word initialed each page.  Compl. ¶¶ 13, 15;

Promissory Note.  Word received $15,000 from Haysbert, but "has made no payments whatsoever

to [Haysbert] in partial or full satisfaction of [Word's] obligations under the Agreement."  Compl.

¶¶ 9, 16.  Haysbert alleges that Word has breached the Agreement and owes late payment interest

of fifteen percent monthly since January 1, 2018, which amounts to $181,500.  Compl. ¶¶ 19–21.

## II.   Procedural History

Haysbert filed this breach of contract action on August 7, 2020, seeking $181,500 in

compensatory damages.  Id. at 6.  "In the alternative, if [Word] does not enter an appearance or is

unable to satisfy his financial obligation under the Agreement," Haysbert asks the Court to enter

an order preventing Word from receiving property as a gift, "staying the sale of the property

located at 808 Nicholson Street, NE, Washington D.C. 20011 until the resolution of this litigation," otherwise preventing "concealment of funds which may be needed to satisfy" a judgment, or else requiring Word to "turn over his interest in Starpoint Global Investments Limited" to Haysbert. Id. at 6–7.  Haysbert also seeks attorneys' fees.  Id. at 7.  Two weeks after filing the Complaint, Haysbert filed a motion for attachment before judgment, seeking a writ of attachment against the property at 808 Nicholson Street, which Word allegedly inherited.  Appl. for Attach. Before J. [ECF No. 6].  Appearing pro se, Word answered the Complaint on August 20, 2020, see Answer [ECF No. 7], but later filed a motion to dismiss, see Mot. to Dismiss [ECF No. 9].  Word seeks to dismiss the action for improper venue under Federal Rule of Civil Procedure 12(b)(3) and forum non conveniens or to "remov[e] this matter to the Virginia Circuit Court located in Hampton, Virginia."  Id. at 1.  Word also moves to dismiss the action for failure to state a claim under Rule 12(b)(6), or alternatively, for summary judgment in favor of Haysbert for $20,400.[1]  Id.  The motion is fully briefed and ripe for consideration.

## LEGAL STANDARD

Under Rule 12(b)(3) and 28 U.S.C. § 1406(a), a case may be dismissed "when venue is 'wrong' or 'improper' in the forum in which it was brought."  Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 55 (2013).  When venue is challenged, the court must determine whether the case satisfies the requirements of federal venue laws.  Id.  If venue is improper, the court "shall dismiss" the case, "or if it be in the interest of justice, transfer [the] case

---

[1] Haysbert also moved for leave to file a surreply to Word's reply in support of his motion to dismiss.  See Pl.'s Mot. for Leave to File Surreply to Def.'s Mot. to Dismiss ("Mot. for Leave to File Surreply") [ECF No. 12].  The Court never received a reply from Word and no reply ever appeared on the docket, but Haysbert attached a reply that his attorneys had received by mail.  See Ex. B, Mot. for Leave to File Surreply [ECF No. 12-3].  That document, titled "Reply Affidavit in Further Support of Motion to Dismiss," is formatted as a court filing and signed by Word.  Id. The Court believes that Word likely intended to file this reply.  The Court will grant leave to file the surreply, but it does not alter the result here because it concerns issues that the Court need not reach.  See Pl.'s Surreply to Def.'s Mot. to Dismiss [ECF No. 12-2].

to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  If venue is proper, a district court nonetheless "may transfer" a case "[f]or the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought or to any district or division to which all parties have consented."  Id. § 1404(a).  And "[s]ection 1404(a) is merely a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system . . . . For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of forum non conveniens 'has continuing application in federal courts.'"  Atl. Marine, 571 U.S. at 60–61 (quoting Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007)).  Forum non conveniens is " a common-law doctrine that requires dismissal if the plaintiff files suit in 'an unsuitable court.'"  Azima v. RAK Inv. Auth., 926 F.3d 870, 873 (D.C. Cir. 2019) (quoting Forum non conveniens, Black's Law Dictionary (10th ed. 2014)).

## ANALYSIS

Word first argues that because the Agreement designates "exclusive jurisdiction and venue" as Hampton, Virginia, this case should be dismissed for improper venue under Rule 12(b)(3).  See Mot. to Dismiss at 2–3.  However, as Word acknowledges, the Supreme Court has held that a forum-selection clause may not be enforced by a motion to dismiss under Rule 12(b)(3) or 28 U.S.C. § 1406(a) unless venue is otherwise improper.  See id. at 3 (citing Atl. Marine, 571 U.S. at 59–61).  Instead, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens," while a forum-selection clause pointing to a federal forum "may be enforced through a motion to transfer under § 1404(a)." Atl. Marine, 571 U.S. at 59–60.

Here, venue is proper because the sole defendant is a resident of Washington, D.C.  See 28

4

U.S.C. § 1391 (providing that venue is proper, inter alia, in a district where a defendant is a resident, if all defendants reside in the same state).  Thus, the only question is whether this action should remain in this Court, be dismissed pursuant to the doctrine of <u>forum non conveniens</u> and re-filed in Hampton Circuit Court (a Virginia state court), or be transferred to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).[2]

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a <u>forum non conveniens</u> motion) must evaluate both the convenience of the parties and various public-interest considerations" and then "decide whether, on balance, a transfer [or dismissal] would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  <u>Atl. Marine</u>, 571 U.S. at 62–63 (quoting 28 U.S.C. §1404(a)).  However, "[t]he calculus changes" if the parties' contract contains a forum-selection clause.  <u>Id.</u> at 63. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause"—or, if the clause specifies a nonfederal forum, dismiss for <u>forum non conveniens</u>.  <u>Id.</u> at 62, 66 n.8.  In this context, "the plaintiff's choice of forum merits no weight" because "when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises."  <u>Id.</u> at 63.  Further, courts "should not consider arguments about the parties' private interests" because "[w]hen parties

---

[2] Although Word's motion is styled as a motion to dismiss under Rule 12(b)(3), the Court will also construe it as a motion to dismiss for <u>forum non conveniens</u> or transfer pursuant to 28 U.S.C. §1404(a).  The motion requests, as an alternative to dismissal under Rule 12(b)(3), an order "REMOVING this matter to the Virginia Circuit Court located in Hampton, Virginia" and the venue section is titled "Dismissal or Removal Forum Non Convieniens" (sic). <u>See</u> Mot. to Dismiss at 1–2.  And, as explained above, Word cites the Supreme Court's holding in <u>Atlantic Marine</u> that a forum-selection clause should be enforced by a motion to dismiss for <u>forum non conveniens</u> or transfer under § 1404(a).  <u>See id.</u> at 3 (citing <u>Atl. Marine</u>, 571 U.S. at 59–61).  This will not prejudice Haysbert, who acknowledges that Word's "sole remedy" is "to transfer the case to another federal district pursuant to 28 U.S.C. §1404(a), or to a state court pursuant to the doctrine of <u>forum non conveniens</u>," and argues why this case should nonetheless remain in this Court.  <u>See</u> Pl.'s Mem. in Opp'n  to Mot. to Dismiss by Reginald Word ("Pl.'s Opp'n") [ECF No. 10] at 4–6.

agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 64.  Hence, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."  Id. at 63 (citation omitted).  Motions to enforce a forum-selection clause should be denied "[o]nly under extraordinary circumstances unrelated to the convenience of the parties," and the non-movant bears the burden of proof.  Id. at 62–63; see also Azima, 926 F.3d at 874 ("[I]f the plaintiff has entered into a contract to litigate his claims in a specific forum, the defendant may enforce that agreement by moving to dismiss for forum non conveniens.  As long as the forum-selection clause is applicable, mandatory, valid, and enforceable, the court must almost always grant the motion to dismiss.").

Haysbert does not challenge the validity, enforceability, or applicability of the forum-selection clause contained in the parties' contract, which provides that "[t]he exclusive jurisdiction and venue of any legal action instituted by any party to this [Agreement] shall be Hampton, Virginia."  Promissory Note at 2.  Nor does Haysbert deny that the clause is mandatory, meaning it requires litigation to proceed in a specific forum, rather than merely permitting suit in that forum.  See Azima, 926 F.3d at 876 (finding forum-selection clause "mandatory because it provides for 'exclusive jurisdiction' in England and Wales.").  Therefore, this Court should grant Word's motion unless Haysbert carries his "burden of showing that public-interest factors overwhelmingly disfavor a transfer" or dismissal.  Atl. Marine, 571 U.S. at 67.

Haysbert has not met that burden.  His only argument is that "[p]reserving venue in Washington D.C. would allow Plaintiff to seek an attachment" of a house located here that Word inherited, "thereby preventing Defendant from . . . disposing of such property until such time as this Court can rule on the underlying matter."  Pl.'s Opp'n at 5.  Haysbert contends that "attachment

of such property is the only way to provide Plaintiff with security that a judgment against Defendant can be collected" and "[e]nforcement of the forum selection clause would substantially deprive Plaintiff of this remedy." Id. at 5–6.  This argument fails for two reasons.

First, Haysbert never explains why his own interest in the remedy of prejudgment attachment qualifies as a public-interest consideration.  Because "private-interest factors . . . weigh entirely in favor of the preselected forum" a court faced with a forum-selection clause "may consider arguments about public-interest factors only."  Atl. Marine, 571 U.S. at 64.  Public-interest factors include considerations like court congestion, a forum's familiarity with the applicable law, and its interest in hearing a localized controversy.  Id. at 62 n.6.  And since "those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  Id. at 64.  This is not such a case.  Attaching Word's property might make it easier and more convenient for Haysbert to collect a judgment, but that is a quintessentially private-interest consideration.  See id. at 62 n.6 (noting that private interest factors include "availability of compulsory process for attendance of unwilling [witnesses]," "relative ease of access to sources of proof," and "other practical problems that make trial of a case easy, expeditious and inexpensive" (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).  This Court need not consider whether the agreed-upon forum affords plaintiff adequate remedies.  Rather, "because the clause 'represents the parties' agreement as to the most proper forum,' [the Court] can assume that they selected one adequate to litigate their claims and to protect their private interests."  Azima, 926 F.3d at 875 (quoting Atl. Marine, 571 U.S. at 63).[3]

---

[3] To be sure, "[i]f the preselected forum is substantially deficient—for instance, because it is effectively inaccessible or unable to afford the plaintiff any relief—then the [forum-selection] clause is not enforceable."  Azima, 926 F.3d at 875.  But Haysbert has not shown that a Virginia state court is inaccessible or unable to provide any relief, and courts routinely dismiss for forum non conveniens even where the remedies provided by the alternative forum are far inferior.  See Piper Aircraft Co., 454 U.S. at 254 (alternative forum is substantially deficient only where remedy provided "is so clearly inadequate or unsatisfactory that it is no remedy at all").

Second, Haysbert fails to explain both why prejudgment attachment is the only way to ensure that any judgment can be collected, and why enforcement of the forum-selection clause would prevent him from seeking such attachment.  Although Haysbert asserts that Word avoided communications in this case until he was served at the inherited property, Pl.'s Opp'n at 5, Haysbert does not claim that Word lacks financial means—besides that property—to pay a judgment.  Moreover, Haysbert provides no reason why litigating this case in Virginia would foreclose prejudgment attachment.  Courts have recognized and enforced prejudgment writs of attachment issued by courts in other states.  See, e.g., Union Underwear Co. v. GI Apparel, Inc., Civ. A. No. 08-00124 (WHW), 2008 WL 3833475, at *1 (D.N.J. Aug. 13, 2008) (recognizing and enforcing "a pre-judgement writ of attachment issued by the United States District Court for the Western District of Kentucky against the real and personal property of Defendant" located in New Jersey "pursuant to Federal Rule of Civil Procedure 64 and the Full Faith and Credit clause.").  Although this Court is not aware whether Virginia's prejudgment attachment statute has extraterritorial application, Haysbert has not denied that it does—or offered any support whatsoever for his bare assertion that enforcement of the forum selection clause would substantially deprive him of the attachment mechanism.  See id. at *6 ("[W]hether a state's attachment statute applies beyond its borders is an individual inquiry into the controlling state's laws and precedent.").

Because Haysbert has failed to carry his burden of showing that public-interest considerations overwhelmingly counsel against enforcing the forum-selection clause, this case should be litigated in the forum to which the parties agreed: a court in Hampton, Virginia.  Word argues that because "[t]here is no Federal District Courthouse in the agreed forum of Hampton, Virginia," this Court should dismiss the case for forum non conveniens instead of transferring to

a federal court in Virginia pursuant to §1404(a).  See Mot. to Dismiss at 3.  The Court agrees.  The forum-selection clause states that "[t]he exclusive jurisdiction and venue of any legal action instituted by any party to this [Agreement] shall be Hampton, Virginia," Promissory Note at 2, which unambiguously requires this case to be resolved in Hampton, Virginia.  There is a state court in Hampton: Hampton Circuit Court, the sole court of general jurisdiction for Virginia's eighth judicial circuit.     See  Hampton  Circuit  Court,   Virginia's   Judicial   System http://www.courts.state.va.us/courts/circuit/hampton/home.html (last visited Jan. 25, 2021); The Circuit Court,  http://www.courts.state.va.us/courts/circuit/circuitinfo.pdf  (last  visited  Jan.  25, 2021).  But although Hampton is located within the Eastern District of Virginia and there is a federal courthouse in nearby Newport News, there is no federal courthouse in Hampton.  See Court Locations,   United   States   District   Court   for   the   Eastern   District   of   Virginia, https://www.vaed.uscourts.gov/court-info/court-locations (last visited Jan. 25, 2021).  Therefore, transferring this case to federal court would cause the dispute to be resolved in a place other than the one designated by contract.

Every Circuit to address the issue has held that a forum selection clause limiting venue for litigation to a particular county prohibits litigation in federal court when there is no federal courthouse located in that county.  See City of Albany v. CH2M Hill, Inc., 924 F.3d 1306, 1308 (9th Cir. 2019) ("An agreement limiting venue for litigation to a particular county unambiguously prohibits litigation in federal court when there is no federal courthouse located in the designated county."); Bartels by & through Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 676 (4th Cir. 2018) ("[T]his case is properly filed with and resolved by any court that is located in Franklin County.  Because there is no federal court in Franklin County, the plain language of the forum-selection clause precludes removal."); Yakin v. Tyler Hill Corp., 566 F.3d 72, 76 (2d Cir. 2009)

("[W]e will effectuate the parties' commitment to trial in Nassau County[;] . . . no reasonable reading of the clause permits the interpretation that the parties had agreed to trial in Suffolk County or Brooklyn because those courthouses were within the Eastern District of New York, which spans an area including Nassau County.").[4]  Here, the forum-selection clause limits venue not to a county, but to the city of Hampton, Virginia.  However, Hampton is a "city"—meaning an "independent incorporated community" that is not in the territory of any county and operates as a county-equivalent with its own court.  See Va. Const. art. VII, § 1.  Thus, it is appropriate to consider case law concerning forum-selection clauses that specify a county, and this Court agrees with the Ninth, Fourth, and Second Circuits' approach.  The forum-selection clause at issue here precludes litigation in federal court because no federal courthouse is located in Hampton, Virginia.  Accordingly, the only way to effectuate the parties' agreement is to limit litigation to Hampton Circuit Court and dismiss this case for forum non conveniens.

Although Haysbert does not raise this point, the Court recognizes that in cases not controlled by a forum-selection clause, courts may have discretion to stay attachment actions pending resolution of substantive disputes in a more convenient forum instead of dismissing simply because the merits of the complaint should be tried elsewhere.  See Barclays Bank, S.A. v. Tsakos, 543 A.2d 802, 808 (D.C. 1988) (remanding, after the trial court quashed prejudgment writs of attachment plaintiff had obtained, because the trial court wrongly "assumed that having determined that the merits of the complaint should not be tried in our court under the doctrine

---

[4] Accord Alliance Health Grp., LLC v. Bridging Health Options, LLC, 553 F.3d 397, 400 (5th Cir. 2008) ("[T]he clause at hand, providing for venue in a specific county, permits venue in either federal or state court, because a federal courthouse is located in that county." (emphasis added)); Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004) ("The contract provision, 'Venue shall be in Broward County,' . . . is most reasonably interpreted to mandate venue in Broward County, and Broward County alone.  The provision, however, does not designate any particular forum, such that a suit either in the Seventeenth Judicial District of Florida, or in the Fort Lauderdale Division of the Southern District of Florida, both of which are located in Broward County, would satisfy the venue requirement." (emphasis added)).

of <u>forum non conveniens</u>, it had no power or discretion to maintain the pretrial attachment pending the outcome of the foreign litigation."); <u>see also</u> <u>NML Capital, Ltd. v. Republic of Argentina</u>, Civ. A. No. 04-0197 (CKK), 2005 WL 8161968, at *2–3, *15 (D.D.C. Aug. 3, 2005) (quashing prejudgment writs of attachment only on sovereign immunity grounds where the parties "agreed that the substance of the breach of contract claims must appropriately be decided in New York" and plaintiff had filed a complaint in D.C. "not to create duplicate litigation, but to allow for Plaintiff to file an <u>ex parte</u> motion for pre-judgment attachment on several of [defendant's] properties in the District of Columbia pursuant to D.C. Code Ann. § 16-50 and 28 U.S.C. § 1610(d).").

However, it is not clear whether, given the forum-selection clause, this Court may keep the attachment portion of the case while the substance of the breach of contract claims are decided in Hampton Circuit Court. After all, the parties agreed that the "<u>exclusive</u> jurisdiction and venue of <u>any</u> legal action instituted by any party to this [Agreement] shall be Hampton, Virginia"—not Hampton, Virginia along with another forum. Promissory Note at 2 (emphasis added). Moreover, the courts in <u>Barclays</u> and <u>NML Capital</u> had <u>already</u> issued prejudgment writs of attachment, so the question was merely whether those attachments should be maintained. This Court has not yet granted plaintiff's motion for attachment before judgment and is not sure that it would, since plaintiff merely speculates—with no supporting facts—that defendant is about to dispose of or hide his property with intent to hinder, delay, or defraud his creditors. <u>See</u> Appl. for Attach. Before J. at 2–3. Therefore, even if this Court has discretion to entertain the motion for prejudgment attachment while the merits of the complaint proceed in Hampton Circuit Court, it declines to do so, and will dismiss the entirety of the case.

Hence, the Court dismisses this case for <u>forum non conveniens</u>. When, as here, a forum-

selection clause points to a state court, the appropriate remedy is "outright dismissal" rather than transfer.  Atl. Marine, 571 U.S. at 60.  The Court need not reach either the question whether the complaint fails to state a claim under Rule 12(b)(6) or Word's request in the alternative to grant summary judgment in favor of Haysbert for only $20,400.[5]

## **CONCLUSION**

For the foregoing reasons, Word's motion to dismiss will be granted.  A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  January 25, 2021

---

[5] The reply that Word sent to Haysbert's attorneys, and likely intended to file, argues that Word's motion to dismiss should be treated as a motion for summary judgment because Haysbert presented facts outside the pleadings to support his argument that the loan was for investment in a business opportunity, and thus not subject to Virginia's prohibitions against usury.  See Ex. B, Mot. for Leave to File Surreply at 3–5.  The reply also states that Word would "conditionally waive the forum non conveniens defense should the Court chose [sic] to grant Summary Judgment in favor of Plaintiff for the amount owed as limited by Virginia's personal usury laws"—$20,400.  See id. at 6.  But the Court would not, in any event, grant summary judgment because there is a genuine dispute of material fact as to whether the loan was a personal loan or for investment in a business opportunity.  Compare Ex. A, Pl.'s Request for Judicial Notice Pursuant to Fed. R. Evid. 201 [ECF No. 11-1] (showing that, the day before Haysbert gave Word the loan, Word emailed Haysbert's family member incorporation records of Starpoint Global Investments Limited, a firm he owned in Uganda, Ghana, and Sierra Leone), with Ex. B, Mot. for Leave to File Surreply at 3 (claiming that Word asked Haysbert for" a personal loan because [Word] had overspent while traveling" and "agreed to a quick (and usury) repayment because [he] expected to receive a lucrative payment from [his] own business ventures within that six (6) business day timeframe").